## TAYLOR v. DOMINICK.

1. MALICIOUS PROSECUTION—EVIDENCE OF CHARACTER.—The rule which
   permits a defendant in an action for malicious criminal prosecution to
   attack the character of the plaintiff has no application to evidence
   offered to show that plaintiff's character had not suffered by reason of
   the prosecution.
2. HARMLESS ERROR—TESTIMONY.—If the trial judge erred in sustaining
   an objection to a question propounded to a witness, it was a harmless
   error where the same witness and another testified fully on the same
   point.
3. IBID.—IBID.—REASONS OF THE JUDGE.—Where the ruling of the trial
   judge is correct, it will not be reversed on appeal because of its being
   based on erroneous grounds.   Therefore where the trial judge excluded
   testimony, ruling that the plaintiff's character was not in issue, it was
   a harmless error where the same testimony was received at another
   stage of the case and went to the jury, and where no effort was made
   to attack the character of the plaintiff.
4. CHARGING JURIES—MALICIOUS PROSECUTION.—The trial judge has no
   right to say anything to the jury as to the sufficiency or insufficiency
   of evidence, nor is he bound to remodel a request to charge so as to
   make the requested proposition correct.  Therefore, in action for
   malicious prosecution, the judge properly refused to charge that the
   finding of "no bill" by the grand jury was "not *sufficient* evidence of
   the want of probable cause," as such finding was *no* evidence on this
   point, and the jury had been already, in effect, so charged.
5. IBID.—IBID.—For like reasons the general powers of the grand jury
   were not relevant to the issues in such an action.
   MR. JUSTICE ALDRICH, *dissenting.*

Before WALLACE, J., Newberry, November, 1890.

In this case Hon. James Aldrich, Judge of the Second Circuit, sat in the place of Mr. Justice Pope, who had been of counsel in the cause. It was an action by J. W. Taylor against W. C. Dominick, for malicious prosecution, commenced December 14, 1889. The case is fully stated in the dissenting opinion of Mr. Justice Aldrich as follows:

This was an action for a malicious criminal prosecution. Plaintiff, in his complaint, alleges: that the defendant instituted a prosecution against him for burglary and grand larceny; that he had been arrested upon that charge upon a warrant sworn out by the defendant; that he was required to enter into a recognizance, conditioned for his appearance to answer said charge in the Court of General Sessions for Newberry County; that an indictment was preferred against him in said court upon said charge; that the grand jury returned "no bill"; that he had been discharged by order of the court, which ended the prosecution; that defendant, in making his affidavit instituting and continuing the prosecution, had acted maliciously and without probable cause; "that by the said prosecution the defendant did this plaintiff incalculable and irreparable injury and damage;" and demanded judgment for five thousand dollars damages and costs. The defendant, in his answer denied each and every allegation of the complaint.

The case, being at issue, came on to be tried at the November term, 1890, of the Court of Common Pleas for Newberry County before his honor, Judge Wallace, and a jury. During the trial defendant's counsel asked the plaintiff as a witness on cross-examination: "Don't you stand just as well in the community as you did?" Plaintiff's counsel objected, "that this is irrelevant." His honor sustained the objection, upon the ground "that this is not a question of character." The question above stated was asked when plaintiff was recalled as a witness in his own behalf, and had testified as follows upon his examination in chief: "Do you think that that prosecution against you for breaking into your grandmother's smokehouse and stealing $1,000 in gold, and being brought up before the trial justice,

24—36

and being required to give a bond and coming into the criminal court here has damaged you at all ? A. Yes, sir ; I think it has. Q. How much has it damaged you ? A. I could not have any idea. It injured my feelings, and I heard the people talking about me out in the community, and I could not have any idea how much it has damaged. Q. Would you have let all that happen for $5,000 ? A. No, sir. Q. Would you have let it happen for anything at all ? Do you feel that that thing can ever be made up ? A. No, sir ; it never can."

During the further progress of the trial the defendant offered Brooks Warner, who resides about four miles from plaintiff, as a witness, to testify as to the character of the plaintiff, and said witness was asked : "By reason of that prosecution has he, *i. e.*, the plaintiff, been damaged in the community in which you live ?" Plaintiff's counsel objected to this question as being irrelevant, and his honor ruled: "He (the plaintiff) said he had been affected outside of his neighborhood ; that was in answer to questions on the cross-examination. The plaintiff has not put his character in issue. He does not claim damages to his character. It is irrelevant, and not in reply to plaintiff's case, and not making out the case of the defendant, and the defendant has got no case, except in reply. The question is asked as to the character of plaintiff outside of his neighborhood. The question is objected to and overruled on account of irrelevancy, and damages are not claimed on account of injury to his character."

His honor was requested to charge the jury : "1. That in an action for malicious prosecution, the fact that the grand jury had returned 'no bill' against the plaintiff, is not sufficient evidence of the want of probable cause for the prosecution which had been brought against him by defendant." His honor declined to so charge, because it was "improper to charge on sufficiency of evidence."

"2. That in order to maintain an action for malicious prosecution, it must appear that the defendant had instituted the prosecution without probable cause, and also through malice. The plaintiff must, of course, show the state of facts that indicate malice, or he subjects his action to a non suit. Throwing out the bill by the grand jury is entirely at their discretion. They are

by no means bound to find the bill, although probable cause exists and is laid before them." His honor embraced all of said request in his general charge to the jury, except the last two sentences, which he refused to charge, upon the ground: "The duties of grand jury irrelevant." He did not charge the jury upon the legal effect of the return of "no bill" by the grand jury, nor upon the duties of the grand jury in regard to bills of indictment.

In his general charge to the jury the presiding judge said: "Now, you will see the first thing, therefore, of which the jury must be satisfied, is that the proceedings complained of have been ended. In order to show that to the jury the record was produced, upon which the finding of no bill was entered, and the order of the presiding judge discharging the defendant from further responsibility under his recognizance, and permitting him to go free without day, according to the form of such orders. That was submitted to you for the purpose of showing that the proceedings complained of here have been ended—that the proceeding is done with."

The jury returned a verdict for the plaintiff for $1,300; judgment was entered upon said verdict, and defendant appeals from said judgment upon the following exceptions:

Because his honor, the presiding judge, erred: 1. In sustaining the objection to the question propounded to plaintiff on his cross-examination, "Don't you stand as well in the community to-day as you did?" and in ruling that "this is not a question of character."

2. In sustaining the objection to the question put to Brooks Warner, "By reason of that prosecution has he (plaintiff) been damaged in the community in which you live?" was irrelevant, and in ruling, "He said he had been affected outside of his neighborhood. That was in answer to question on cross-examination. The plaintiff has not put his character in issue. He does not claim damages to his character. It is irrelevant, and not in reply to plaintiff's case, and not making out the case of the defendant, and the defendant has got no case, except in reply. The question is asked as to the character of the plaintiff outside of his neighborhood. The question is objected to and overruled on account of

irrelevancy, as damages are not claimed on account of injury to his character."

3. In ruling that the defendant could not introduce evidence as to the character of plaintiff in this action.

4. In ruling that the defendant could not introduce evidence as to the character of the plaintiff under the general denial of the complaint interposed by the answer.

5. In ruling that the plaintiff's character was not in issue, and that the plaintiff did not claim damages to his character.

6. In ruling that testimony on the part of the defendant as to the character of the plaintiff was: 1st, irrelevant; 2d, not in reply to the plaintiff's case; and 3d, not making out the case of the defendant.

7. In ruling that the question asked as to the character of the plaintiff outside of his neighborhood was irrelevant, and that damages are not claimed on account of injury to his character, and for that reason excluding evidence as to character of plaintiff.

8. In refusing to charge the jury as requested by the defendant, "That in an action for malicious prosecution the fact that the grand jury had returned 'no bill' against the plaintiff is not sufficient evidence of the want of probable cause for the prosecution which had been brought against him by the defendant."

9. In refusing to charge the jury as requested by the defendant, "Throwing out the bill by the grand jury was entirely in their discretion. They are by no means bound to find the bill, though probable cause exist and is laid before them."

*Messrs. Blease & Blease* and *Geo. S. Mower*, for appellant.

*Messrs. Johnstone & Cromer*, contra.

June 6, 1892.  The opinion of the court was delivered by

MR. CHIEF JUSTICE MCIVER.  Being unable to concur in all the conclusions reached by his honor, Judge Aldrich, I propose to state, very briefly, the reasons for my difference of opinion. I do not understand that the testimony objected to was offered for the purpose of showing, or that it tended to show, that

the character of the plaintiff was either good or bad ; but, on the contrary, it was manifestly offered for the purpose of showing that plaintiff's reputation has suffered no damage by reason of the groundless prosecution which had been brought against him—that he stood just as well in the community as he had done before. While, therefore, it may be, and is, conceded that the authorities cited in the opinion of his honor, Judge Aldrich, to show that it is competent for the plaintiff, in an action for malicious prosecution, to introduce evidence tending to show his good character, and for the defendant in such an action to offer evidence assailing plaintiff's character, it does not seem to me that any one of those authorities touch the question here presented; and, so far as I am informed, there is no authority decisive of that question.

A careful examination of the "Case" will show that no testimony was offered tending either to assail or to sustain the general character of the plaintiff, and hence the Circuit Judge neither made, nor was he called on to make, any ruling as to the competency of such testimony. While it is true that there is a general statement made in the "Case" that "the defendant offered Brooks Warner, who resides about four miles from plaintiff, as a witness, to testify as to the character of the plaintiff," yet when we turn to the notes of the stenographer of the proceedings at the trial, set out in full in the "Case," we find the following : "*Brooks Warner* called for defendant, being sworn : *By Mr. Blease :* Do you live in the same community with Mr. Willie Taylor ? A. No, sir. Q. How far do you live from Mr. Taylor ? A. I suppose about four miles. Q. Has Mr. Taylor been damaged because he was prosecuted for breaking into Mr. Dominick's house ?" To this last question defendant's counsel objected and the objection was *overruled.* The witness was then asked by the same attorney : "Do you know whether the plaintiff has been damaged in the neghborhood ? A. I don't think he has. I think he stands about as high in our community as he did before. Q. Do you know whether he has been damaged ? A. No, sir ; I couldn't say that. I live four miles from him. I don't know what the community thinks of him. I can only say what the community that I live in say. Q. By reason of that

prosecution has he been damaged in the community in which you live?" To this last question defendant's counsel objected, and then it was that the Circuit Judge made the ruling set out in the second ground of appeal sustaining the objection.

It also appears in the "Case" that when the plaintiff was on the stand as a witness he was asked on the cross-examination the following question: "Don't you stand just as well in the community to-day as you did?" which, being objected to, the court ruled: "This is not a question of character;" but it likewise there appears that in the course of the same cross-examination the plaintiff was permitted to testify without objection: "Around home I suppose I stand as good as ever, but not at other places. I do not; where men don't know me, certainly not." So that it seems to me, even if the ruling complained of was erroneous (a question which I do not propose to consider) it was a harmless error, as the plaintiff was permitted to testify that while the prosecution had not injured his standing in the immediate neighborhood in which he lived, yet it had injured him in other communities, and the witness, Brooks Warner, was permitted to testify that the standing or reputation of the plaintiff had not been injured by the prosecution in the community in which he resided.

It is urged, however, that the remarks of the Circuit Judge, that "this is not a question of character," and that "the plaintiff has not put his character in issue. He does not claim damages to his character," &c., excluded defendant from the privilege of offering testimony tending to show that plaintiff was a person of bad character. I do not think that such a view can be sustained. It is well settled that this court confines itself to a consideration of the questions determined by the court below, without regard to the correctness of the reasons which may be given for the conclusion that may there be reached, and that if the conclusion reached is correct, the fact that erroneous reasons are given for such conclusion will not warrant this court in reversing the judgment appealed from. So that even conceding that there was error in the reason given—that the plaintiff's character was not in issue—for the ruling complained of, that is not sufficient ground to reverse the judgment, when it appears

that the testimony, though erroneously ruled out at one stage of the trial, was, in fact, received and went before the jury. There is nothing whatever in the "Case" tending to show that the defendant either offered or desired to introduce evidence assailing the general character of the plaintiff, and, therefore, the idea that he was deterred from doing so by the ruling of the Circuit Judge just considered rests only on conjecture, in which I do not think this court is permitted to indulge. The general remark made in the statement of the case, that Brooks Warner was offered as a witness to testify as to the character of the plaintiff, is not sufficient to support such a conjecture, for when that witness was put upon the stand, not a single question was asked him as to the general character of the plaintiff, and, on the contrary, he was interrogated only as to the injury which plaintiff's reputation had or had not sustained in the community where the witness resided.

Next, as the error assigned in the 8th ground of appeal. It does not seem to me that the Circuit Judge erred in refusing the request in the form in which it was submitted, which constitutes the basis of this ground. There is nothing better settled than that the Circuit Judge has no right to say anything to the jury as to the sufficiency or insufficiency of any evidence, properly before them, to establish any fact at issue in a given cause. He may, if he sees proper, or if he is requested so to do, instruct the jury as to what is or is not legal evidence of a fact; but when any evidence is properly before the jury for any purpose, he has no authority to instruct the jury, or even to intimate any opinion, as to its sufficiency to establish any fact in the case. Nor is a Circuit Judge under any obligation to restate a proposition incorrectly stated in the request, and thus corrected charge such request; for if the proposition, as stated, cannot be properly charged, he may refuse the request altogether.

Now, in this case the Circuit Judge was not requested to instruct the jury that the finding of the grand jury constituted no evidence whatever as to the question, whether there was or was not probable cause for the prosecution, but the request was to instruct the jury that such finding "is not *sufficient* evidence of the want of probable cause," thereby implying that it was *some,*

though not *sufficient*, evidence of that fact, which would have been erroneous, as it is well settled, both by reason and authority, that in considering the question as to probable cause, the attention must be confined to the facts as they presented themselves to the mind of the prosecutor *at the time of the institution of the prosecution*, without regard to any fact occurring afterwards, for the very obvious reason, that the mind of the prosecutor could not possibly have been affected by any fact which may have occurred after he had commenced the prosecution. *Hogg* v. *Pinckney*, 16 S. C., 387; *Caldwell* v. *Bennett*, 22 *Id.*, 1. It seems to me plain, therefore, that there was no error in refusing the request in the form in which it was submitted. Especially is this so when, as in this case, the Circuit Judge had already, in his general charge, practically instructed the jury that the finding of the grand jury with the order of discharge was introduced only for the purpose, and could only have the effect, of showing that the prosecution had been ended before the commencement of this action. For like reasons, I do not think the 9th ground of appeal can be sustained. The general powers of the grand jury were not relevant to any issue submitted to the jury, and the request to charge upon which this ground is based was, therefore, properly refused.

It seems to me that there was no such error in the rulings below as would warrant this court in reversing the judgment appealed from, and I think, therefore, that the same should be affirmed; and this being the conclusion reached by a majority of the court,

It is the judgment of this court, that the judgment of the Circuit Court be affirmed.

MR. JUSTICE McGOWAN concurred.

MR. JUSTICE ALDRICH, *dissenting.* [His statement of the case has been already given.] The first seven exceptions raise, practically, the question: In this action for malicious prosecution, based upon the prosecution of the plaintiff by the defendant for burglary and grand larceny, should the defendant have been allowed to introduce testimony in regard to the character of the

plaintiff? The Circuit Judge refused to admit such testimony, holding that testimony as to character was improper, because, 1st, character not involved, therefore irrelevant; 2nd, not in reply to plaintiff's case; and, 3rd, not making out defendant's case.

Plaintiff, in his complaint, alleges: "That by the said prosecution the defendant did this plaintiff incalculable and irreparable injury and damage." He does not specify how he has been injured and damaged; but his allegation is so worded as to cover all the elements of damage growing out of a malicious prosecution. Is injury to character or reputation an element of damage in action like this? Plaintiff and his counsel seem to be of that opinion, for plaintiff, as a witness in his own behalf, on his examination in chief, and in reply to his counsel's questions, laid particular stress upon the injury to his character caused by the criminal prosecution. It is true that he did not, in exact language, say, "that prosecution injured my character"; but that such was his meaning, will appear by reference to what he did say. He said the prosecution "injured my feelings, and I heard the people talking about me out in the community, and I could not have any idea how much it damaged me." How is it possible for the talk in his community to injure him except in his character? The testimony of the plaintiff was before the jury, and his character was put in issue, and thereby he did "claim damages to his character."

The counsel for plaintiff say: "The plaintiff's character was not assailed. The only character evidence was addressed to the proof that the plaintiff's reputation is still good. *The defendant introduced no witness, offered no testimony, and made no attempt to prove that the plaintiff was, at the time of the prosecution, a man of bad character.*" The "Case," by which we are bound, says that Brooks Warner, a witness for the defendant, was "offered" (introduced) by defendant "as a witness to testify as to the character of the plaintiff." This means that the purpose for which Warner was put upon the witness stand was to prove the character of plaintiff, and that the court was advised of that purpose. This statement is supported by the ruling of the judge, which is very broad, and eliminated the issue of character from the case. The defendant's counsel, after the ruling of the

judge, did not ask the witness another question.   It was proper for him to refrain, because he was bound to respect the ruling of the judge, and any further questions as to the character of plaintiff would have violated the ruling of the court.

What are the elements of damage in a case of this kind ?   The charge in the criminal case, out of which this action has grown, was burglary and grand larceny, one of the most serious proximate effects of which would be the injury to the character and reputation of the accused.   It necessarily involved his character. Generally it is laid down that the elements of damages in the action for malicious prosecution are the injury to the reputation or character, feelings, health, mind, and person, as well as expenses incurred in defending the prosecution.   "In an action for malicious prosecution, indemnity is awarded for all the injury to reputation, feelings. health, mind, and person, caused by the arrest of the plaintiff ; also for the injury to his fame and reputation occasioned by the false accusation."   3 Laws. R., R. & P., page 1909, § 1104.   "*Malicious prosecution.*   No certain rule can be laid down for estimating damages in such actions.   The jury are to consider all the facts and give compensation to the defendant for the injury done to his reputation, for his mental and physical suffering, and the indignity he has suffered, and the costs he has incurred in defending the previous action."   5 Am. & Eng. Enc. L., page 48.

In the notes in the work just mentioned we find, page 48 : "In *Savill* v. *Roberts*, 1 Ld. Raym., 374, the elements of damage for malicious prosecution are said to be :   1.  Damages to a man's fame, as if the matter whereof he be accused be scandalous."   "For injury to the reputation, the same elements are to be considered as are proper in the case of slander and libel." *Sheldon* v. *Carpenter*, 4 N. Y., 579.   "The measure of damages in such cases is a full indemnity to the plaintiff for all the losses sustained, including the peril to his life and liberty and injury to his reputation, feelings, and person, according to the character of the prosecution, and all expenses incurred in the defence of the original suit or prosecution, and even extraordinary expenses, as attorneys' fees, incurred in the defence."   Field on Damages, sec. 687.   To the same effect see, also, 3 Suth. Dam., 703, and

4 Field Lawyer's Briefs, and cases there cited, pages 430 and 431.

We think, therefore, that the ruling of the presiding judge, that "The plaintiff has not put his character in issue. He does not claim damages to his character," is erroneous. We think that the evidence was relevant and admissible, and upon two grounds: 1st. As affecting the issue of probable or reasonable cause, and as tending to support defendant's defence of probable cause, and to break down plaintiff's allegation of want of probable cause for the prosecution. 2nd. As matter in mitigation of damages and, possibly, as rebutting malice.

1. As evidence of probable cause. "According to the better authorities, the defendant may prove the general bad reputation of the plaintiff, both to rebut the proof of want of probable cause and in mitigation of damages. 3 Suth. Dam., 708. This is the general rule, and it is founded upon reason. "Evidence of the general bad reputation of the plaintiff before the institution of the prosecution is admissible on the question of reasonable cause. The same facts which would raise a strong suspicion in the mind of a cautious and reasonable man against a person of notoriously bad character for honesty and integrity would make a slighter impression if they tended to throw the charge of guilt upon a man of good reputation. Bad character, added to other circumstances, might amount to such a reasonable ground of suspicion as to induce a person innocent of any malicious motive to proceed against him; for it required weaker circumstances of suspicion to commence a prosecution against a man of bad character than against a man of good character. So evidence of his good character and reputation is admissible on the plaintiff's behalf." 3 Laws. R., R. & P., page 1879, § 1095.

Defendant, in an action for malicious prosecution, is entitled to show that the general character of plaintiff was that of a gambler and horse racer, as it would require less stringent proof to make out probable cause for prosecuting such a character for larceny than one whose character was good, and who followed an occupation altogether lawful. *Martin v. Hardesty*, 27 Ala., 458; s. c. 62 Am. Dec., 773. "Among circumstances tending to show want of probable cause, the good char-

acter of the accused should be given a prominent place." *Ross* v. *Innis*, 35 Ill., 487; s. c. 85 Am. Dec., 373. Therefore, upon the "doctrine of reciprocity," laid down in *Buford* v. *McLuny*, 1 Nott & McC., \*268, cited later on. the bad character of plaintiff ought to be admissible to sustain the defence of probable cause.

2. In mitigation of damages. "Evidence of the general character and reputation of the plaintiff is admissible, this both as affecting the question of damages and, probably, too, as affecting the question of probable cause." 14 Am. & Eng. Enc. L., 59. "Evidence of the character of the plaintiff may be admissible on another ground,. *i. e.*, in mitigation of damages. In order to ascertain the injury done to the plaintiff, the jury must necessarily take into consideration his personal character. If good, his damages should be greater; if bad, smaller." 3 Laws. R., R. & P., page 1879, § 1095. In Buford *v.* McLuny, 1 Nott & McC., \*268, it is decided that in an action of slander, evidence of the general bad character of the plaintiff is admissible in mitigation of damages; and the court says: "A plaintiff is permitted to put his good character in evidence by way of enhancing the damages, and upon the principle of reciprocity the defendant ought to be permitted to prove the contrary. \* \* \* In an action for a malicious prosecution evidence of the general bad character of the plaintiff may be given. Phil. Evid., 140."

, In action of slander, evidence of the plaintiff's general bad character, but not of a particular criminal act, other than that imputed to him, is admissible in mitigation of damages. *Sawyer* v. *Eiferi*, 2 Nott & McC., 511. In this case the court say: "There can be nothing more unreasonable than that a person who, by a long course of vice, has proved himself to be so destitute of every moral principle as to be capable of committing any crime, should be entitled to recover the same damages in an action of slander as a person of spotless fame, merely because he has not acquired any general character, with regard to the particular crime of which he has been accused. It is within our daily experience that there are persons in every community so destitute of character, or rather so notorious for their bad character, as to furnish good ground of belief that they are capable

of committing many offences of which they have never been accused, and for which they may not have acquired any particular character."

"In an action of slander, the plaintiff may give evidence of his general good character, though his character be not attacked by the defendant." *Williams* v. *Haig*, 3 Rich., 362. In this case the court say : "The rules laid down by Lord Ellenborough in *Stuart* v. *Lovell*, 2 Stark., 93, cited in 2 Phil. Evid., 107, that the plaintiff will not be allowed to give evidence of the fairness of his character till his character is attacked, is clearly predicated on the assumption that the plaintiff's character is not put in issue ; and that the defendant cannot, in mitigation of damages, give in evidence the plaintiff's general bad character— and that is, perhaps, according to the current of the English decisions. But in *Buford* v. *McLuny*, 1 Nott & McC., 269, a different rule, which has since been universally followed, prevailed. There it is said that the plaintiff's character is directly put in issue by the action of slander, and that defendant may, in mitigation, give in evidence his general bad character—and this diversity in the rule necessarily leads to a corresponding modification of the rules of evidence. It has been settled by a series of decisions in our courts that what a party cannot plead in justification, he is permitted to give in evidence by way of mitigation. 1 Nott & McC., 268. Under this rule a defendant may give in evidence under the general issue : 1st. The plaintiff's general character, without reference to the particular nature of the offence with which he is charged. 2d. Facts and circumstances, not amounting to actual proof of guilt, but going to create a suspicion." Evidence of general character of plaintiff is admissible in mitigation of damages under the general issue. *Paddock* v. *Salisbury*, 2 Cowen, *811.

I think that the evidence was relevant and admissible, under the pleadings in this case, upon the general issue, as tending to show probable cause, and in mitigation of damages. Hence, I think that the presiding judge erred in rejecting the evidence, and in ruling, "It is irrelevant and not in reply to the plaintiff's case, and not making out the case of the defendant, and the defendant has got no case except in reply."

The defendant's 8th exception is: "Because his honor erred in refusing to charge the jury as requested by the defendant, 'That in an action for malicious prosecution, the fact that the grand jury had returned "no bill" against the plaintiff, is not sufficient evidence of the want of probable cause for the prosecution which had been brought against him by the defendant.' " His honor refused the request on the ground that it was "improper to charge on sufficiency of evidence." Plaintiff's counsel contend that the trial judge charged, in effect, that the finding of "no bill" by the grand jury was not evidence at all of the want of probable cause, and that such finding was not introduced as such evidence. In passing, I would say that if the finding was in evidence at all, it was before the jury. The portion of the charge alluded to reads: "Now, you will see, the first thing, therefore, of which the jury must be satisfied, is that the proceedings complained of have been ended. In order to show that to the jury the record was produced upon which the finding of no bill was entered, and the order of the presiding judge discharging the defendant from further responsibility under his recognizance, and permitting him to go free without day, according to the form of such orders. That was submitted to you for the purpose of showing that the proceedings complained of here have been ended; that proceeding is done with."

If this portion of the charge included the request of the defendant, his honor would not have refused, in plain terms, to charge the request. It was incumbent upon plaintiff to show that the criminal prosecution was ended before he began his action, and the return of "no bill" and the order of discharge established that fact. *Fulmer* v. *Harmon*, 3 Strob., 581; *Caldwell* v. *Bennett*, 22 S. C., 5. The charge was upon the issue, whether or not the criminal prosecution complained of here was ended; the request applied to another and distinct issue, viz., the want of probable cause for the prosecution. I do not think that the charge covered the request. The case of *Fulmer* v. *Harmon*, *supra*, settled the law, that in an action for a malicious prosecution, the fact that the grand jury had returned "no bill" against the plaintiff, is not, *prima facie*, sufficient evidence of the want of probable cause for the prosecution which had been brought against him by defen-

dant, so as to save the plaintiff from a non-suit. "In the first place, it is supposed that a *mere discontinuance is prima facie* enough to establish a want of probable cause. But surely there can be no ground for such a motion when neither a *nolle prosequi* nor 'no bill' by the grand jury in a criminal matter can have such effect." *Ford* v. *Kelsey & Deas*, 4 Rich., 374.

The recent case of *Caldwell* v. *Bennett*, 22 S. C., 5, cites numerous authorities, and states the law upon this subject clearly and fully, as follows: "It must be admitted that the exact boundary line between the province of the judge and that of the jury, in determining the existence or want of probable cause in actions for malicious prosecution, does not seem to be well defined by the authorities in this State. There is no doubt that, upon well settled principles, it is the exclusive province of the jury to pass upon the truth of the facts and circumstances relied upon as establishing the presence or absence of probable cause; and it seems to be well settled that a fact occurring after the matter or transaction which gives rise to a prosecution, or a civil action, such as the finding of 'no bill' by the grand jury, the entry of a *nolle prosequi* by a prosecuting officer, the failure to prosecute, or the discontinuance of a civil action, will, as matter of law, be held insufficient to constitute even *prima facie* evidence of a want of probable cause." In this case the finding of "no bill" by the grand jury was a fact which occurred "after the matter or transaction which" gave rise to the "prosecution," and, "as matter of law," it was "insufficient to constitute even *prima facie* evidence of want of probable cause." I think that the presiding judge should have charged this request, and that his refusal to charge the same was erroneous.

Defendant's ninth and last exception is that his honor "erred in refusing to charge the jury as requested by the defendant, 'Throwing out the bill by the grand jury was entirely in their discretion. They are by no means bound to find the bill, though probable cause exist and is laid before them.'" His honor refused this request upon the ground that "the duties of grand jury are irrelevant." This request is taken literally from the opinion in the case of *Fulmer* v. *Harmon*, *supra*, and occurs in the discussion of the question, whether the return of "no bill" by

the grand jury is evidence of a want of probable cause for the prosecution, and as a reason, showing that it is not evidence of that fact, the court say : "Throwing out the bill by the grand jury is entirely at their discretion. They are by no means bound to find the bill, although probable cause exist and is laid before them." It is no where suggested that it is the duty of the judge to charge the jury upon the duties of the grand jury in regard to bills of indictment. The presiding judge charged the jury that the return of "no bill" and the order of discharge were introduced in evidence to show that the criminal prosecution was ended. I have held that he should have charged defendant's first request as a matter of law, because, among other reasons, the action of the grand jury occurred long after the prosecution in the criminal case was begun, after plaintiff had been arrested and had given bond for his appearance. These two propositions cover the case, and beyond these it was unnecessary for the judge to go. We therefore concur with the presiding judge in his refusal to charge this request, upon the ground stated by him, "the duties of the grand jury are irrelevant."

I think the judgment of this court should be, that the judgment of the Circuit Court be reversed, and that the case be remanded to that court for a new trial.

Judgment affirmed.